# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

MELISSA MORRISON                                           PLAINTIFF

V.                      NO. 3:17CV00147-JTR

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions not reserved
to the Commissioner of Social Security               DEFENDANT

## ORDER

**I. Introduction:**

Plaintiff, Melissa Morrison, applied for disability benefits on September 10, 2014, alleging a disability onset date of September 5, 2014. (Tr. at 12). After conducting a hearing, the Administrative Law Judge ("ALJ") denied Morrison's application. (Tr. at 25). The Appeals Council denied her request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

**II. The Commissioner's Decision:**

The ALJ found that Morrison had not engaged in substantial gainful activity since the alleged onset date of September 5, 2014. (Tr. at 14). Morrison worked after

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

the alleged onset date but this work activity did not rise to the level of substantial gainful activity. *Id.* At Step Two, the ALJ found that Morrison has the following severe impairments: degenerative disc disease with back pain, anxiety, and depression. (Tr. at 15).

After finding that Morrison's impairments did not meet or equal a listed impairment (Tr. at 15), the ALJ determined that Morrison had the residual functional capacity ("RFC") to perform light work, except that: (1) she can only occasionally climb, balance, stoop, bend, crouch, kneel, or crawl; and (2) she can perform work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. (Tr. a 17).

The ALJ found that, based on Morrison's RFC, she was unable to perform any past relevant work. (Tr. at 23). However, relying upon the testimony of the Vocational Expert ("VE"), the ALJ found that, based on Morrison's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions as a motel cleaner, and machine tender. (Tr. at 24). Thus, the ALJ concluded that Morrison was not disabled. *Id.*

### III. <u>Discussion:</u>

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

B. Morrison's Arguments on Appeal

Morrison contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that: (1) the ALJ erred by not finding carpal tunnel syndrome and hand pain to be a severe impairment;[2] and (2) the RFC did not incorporate all of Morrison's limitations. For the reasons explained below, the Court

---

[2] At Step Two, the ALJ determines whether impairments are severe. Here, the ALJ did not mention Morrison's hand condition at all.

agrees with Morrison that the ALJ erred in failing to properly consider her hand condition.

While the record does not indicate an abundance of treatment for hand pain, on February 11, 2014, an APRN noted thumb pain on flexion and extension with tenderness to palpation at the MC joint. (Tr. at 392-395). The APRN diagnosed carpometacarpal sprain/strain, and prescribed Flexeril and meloxicam. (Tr. at 393).

On July 18, 2014, Morrison complained of constant, shooting hand pain. (Tr. at 379-381). Tinel's sign was noted on physical examination of the extremities.[3] The provider diagnosed carpal tunnel syndrome and hand pain. *Id*. Morrison was treated with a corticosteroid injection and prescribed hand splints. *Id.*

On December 8, 2014, Morrison again reported hand pain to her PCP. (Tr. at 453). He noted moderate tenderness and swelling of both wrists. (Tr. at 455). An x-ray of the left hand revealed moderate to severe thumb carpometacarpal joint space narrowing with osteophyte formation and subchondral cyst-like change; severe and advanced index finger distal interphalangeal degenerative arthrosis; and mild to moderate long finger distal interphalangeal degenerative arthrosis. (Tr. at 436).

---

[3] Tinel's sign is a way to detect irritated nerves. The test is positive when there is pressure neuropathy of the nerve, like in the foot or ankle, or in the hand. When the nerve is trapped the patient will feel tingling's in the distal area. https://www.physio--pedia.com/Tinel%E2%80%99s_Test.

Morrison argues that the ALJ should have classified her hand condition as a severe impairment. The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). A physical or mental impairment must last or be expected to last not less than 12 months. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006). If the impairment would have no more than a minimal effect on the claimant's ability to do work, then it does not satisfy the requirement of Step Two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).

Here, Morrison's complaints of hand pain were followed up by diagnoses of hand impairments by her providers. She had a positive Tinel's test. She was treated with pain medications, steroid injections, and hand splints. Most persuasive is the x-ray of Morrison's hands showing "severe" and "advanced" conditions. This medical imaging offers strong support for a severe classification at Step Two. At a minimum, the ALJ was at least required to discuss the condition in his Step Two analysis and explain why he did not consider it to be a severe impairment.

The ALJ also reasoned that Morrison's daily activities did not indicate problems with grasping, fingering, or handling.(Tr. at 20). In Morrison's second adult function report, she said she could no longer work her factory job, cook, clean,

or play with her grandchildren. (Tr. at 262). Morrison testified that he left hand goes numb and she has a knot on her thumb, and that any housework is difficult and takes a while. (Tr. at 40-41). Given the objective evidence of compromise in her hands, Morrison's testimony is persuasive.

Finally, Morrison points out that the record is devoid of any treating provider opinions, and the ALJ did not order any consultative examinations. Therefore, the only medical opinions the ALJ could rely upon were those of the state-agency non-examining consultants. The x-ray evidence and treatment required by Morrison strongly suggest that she should have been evaluated by a consultative medical examiner. The ALJ is required to develop the record fully and order examinations if the evidence is inconclusive. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). The non-examining physician, who merely reviewed Morrison's medical records, found *no limitations* on fine manipulation (Tr. at 62, 89), a conclusion that is in direct conflict with the medical evidence documenting Morrison's hand condition. The resolution of that conflict required a consultative examination, which the ALJ did not order. Accordingly, the ALJ also failed to fully develop the record.

## IV. <u>Conclusion</u>:

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in

the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ did not conduct a complete analysis at Step Two and did not fully develop the record.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 3rd day of April, 2018.

_____
UNITED STATES MAGISTRATE JUDGE